MARTIN S. SCHNEIDER and MATHILDA J. SCHNEIDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schneider v. Commissioner
Docket No. 9297-75.
United States Tax Court
T.C. Memo 1977-179; 1977 Tax Ct. Memo LEXIS 261; 36 T.C.M. (CCH) 751; T.C.M. (RIA) 770179; June 13, 1977, Filed Martin S. Schneider, pro se. C. Phil Harney, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax of petitioners and additions to tax as follows: Taxable
Deficiency
Additions to Tax
Year
in Tax
Sec. 6653(b) [1]
1962
$ 1,972.40
$ 986.20
1963
2,472.31
1,236.16
1964
1,678.71
839.36
1965
1,654.64
827.32
1966
9,969.89
4,984.94
1967
7,933.12
3,966.56
1968
1,949.26
1,172.43
The issues to be decided are whether petitioners omitted income from their returns for all of the years involved, whether the resulting underpayments of *262 tax were due to fraud on the part of Petitioner Martin S. Schneider, whether he is collaterally estopped to deny fraud for a year in which he was convicted of tax evasion, and whether Petitioner Mathilda J. Schneider should be relieved of liability as an "innocent spouse." Assessments of additional tax and additions to tax are barred by expiration of the period of limitations on assessment absent a finding of fraud. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts, supplemental stipulation of facts and exhibits are incorporated by reference. Petitioners, husband and wife, lived on a farm on Rural Route 1, Olmitz, Kansas, when they filed their petition. They filed their joint Federal income tax returns for the taxable years 1962 through 1966 with the District Director of Internal Revenue, Wichita, Kansas and the returns for 1967 and 1968 with the Southwest Regional Service Center, Internal Revenue Service, Austin, Texas. The returns, as well as petitioners' books, were prepared on the cash method of accounting. During the years involved and prior and subsequent thereto petitioners lived on and operated a farm. They raised wheat, cattle and hogs. *263 In addition to the income earned from such endeavors, petitioners received income from savings accounts, small amounts of oil royalties, and payments from U.S. Department of Agriculture. Petitioners had joint savings accounts at Prudential Savings Association and Peoples Savings and Loan Association, Great Bend, Kansas, and a joint checking account at Farmers State Bank, Albert, Kansas. Olmitz, Albert and Great Bend are all located in Barton County, Kansas and are all in the same trade area. Petitioners' Federal income tax returns for 1962 to 1968, inclusive, were prepared by a Mr. Linenberger who was senior vice president of Farmers State Bank where petitioners maintained their checking account. For each of the years involved Mr. Schneider prepared handwritten lists of receipts and expenses from receipts, bills and deposit slips which he totaled without the aid of an adding machine and transferred to a worksheet which he delivered to Mr. Linenberger. He did not deliver any canceled checks, deposit slips or bank statements. Mr. Linenberger did not question Mr. Schneider about his income or expenses; instead he merely accepted the figures on the worksheet and prepared the *264 tax return for Mr. Schneider. Mr. Linenberger would prepare a check for Mr. Schneider to sign if the return required payment of tax. Mr. Schneider and Mr. Linenberger would have a general discussion about the return in Mr. Linenberger's office and Mr. Schneider would take the original return, one copy and his worksheet with him to the farm where Mrs. Schneider would execute the return. Mr. Schneider then mailed the return to the Internal Revenue Service. Mr. Linenberger did not retain a copy of the return or the worksheet prepared by Mr. Schneider. Mr. Linenberger's participation and practice in connection with the preparation of petitioners' income tax returns was no different than those for other tax clients. Mr. Schneider had no knowledge of bookkeeping. Petitioners suffered personal health problems during the years involved and petitioners' son and petitioners' parents suffered numerous health problems, some resulting in death, which imposed substantial emotional and physical burdens on petitioners. Special Agent Larson of the Internal Revenue Service first contacted Mr. Schneider about petitioners' income tax returns in 1969. Mr. Schneider told Agent Larson about *265 his checking and savings accounts. Agent Larson did not interview Mrs. Schneider. Petitioners reported on their returns for the taxable years involved all of the interest earned on their savings accounts reflected on Forms 1099 and payments from the U.S. Department of Agriculture. Deposits to petitioners' savings accounts were recorded in passbooks; deposit slips were not issued by the savings institutions; nor did the institutions render statements of savings accounts. Mr. Schneider paid most of the bills and wrote most of the checks. In November 1967 Mr. Schneider entered into an agreement with the other heirs of his father's estate to purchase four quarter sections of land in Barton County, Kansas for $128,000. In January 1968, Mr. Schneider paid the total consideration for the land from petitioners' joint checking account at Farmers State Bank. The funds were made available in that account by transfers from petitioners' savings accounts. Title was conveyed to Mr. Schneider in January 1968. Sometime after 1969 title was conveyed to petitioners in joint tenancy with right of survivorship. The following schedule depicts gross receipts of petitioners in each of the *266 taxable years, the amounts of such receipts reported on their income tax returns, and the net amounts of such receipts which they failed to report: Sales of
Sales of
Sales of
Cattle
Grain
Swine
1962
Income received
$3,762.81
$ 7,500.00
$454.30
Income reported
832.21
5,439.26
329.30
Unreported income
$2,930.60
$ 2,060.74
$125.00
$ 8,711.76
1963
Income received
$ 152.50
$ 3,600.00
$121.50
Income reported
152.50
3,000.00
121.50
Unreported income
$ none
$ 600.00
$ none
1964
Income received
$3,636.63
$ 4,545.42
$117.50
Income reported
none
2,820.42
117.50
Unreported income
$3,636.63
$ 1,725.00
$ none
$ 5,856.65
1965
Income received
$4,606.13
$ 5,041.48
$309.00
Income reported
90.00
2,732.98
309.00
Unreported income
$4,516.13
$ 2,308.50
$ none
$ 7,332.69
1966
Income received
$6,563.30
$34,204.91
$155.00
41,160.88
Income reported
540.00
1,996.86
155.00
Unreported income
$6,023.30
$32,208.05
$ none
1967
Income received
$ none
$21,215.44
$161.75
Income reported
none
2,200.00
none
Unreported income
$ none
$19,015.44
$161.75
$19,976.14
1968
Income received
$4,723.78
$ 6,057.96
$358.55
Income reported
none
2,680.00
none
Unreported income
$4,723.78
$ 3,377.96
$358.55
*267 Not
Labor
Identified
Total
1962
$ 15.00
$ 3,580.42
$15,312.53
none
none
6,600.77
$ 15.00
$ 3,580.42
$ 8,711.76
1963
$ none
$10,350.06
$14,224.06
none
none
3,274.00
$ none
$10,350.06
$10,950.06
1964
$ none
$ 495.02
$ 8,794.57
none
none
2,937.92
$ none
$ 495.02
$ 5,856.65
1965
$ none
$ 508.06
$10,464.67
none
none
3,131.98
$ none
$ 508.06
1966
$ none
$ 237.67
none
none
2,691.86
$ none
$ 237.67
$38,469.02
1967
265.00
$ 533.95
$22,176.14
none
none
2,200.00
$265.00
$ 533.95
$19,976.14
1968
$298.00
$ 269.49
$11,707.78
none
none
2,680.00
$298.00
$ 269.49
$ 9,027.78
Income omitted from petitioners' income tax returns was deposited to their savings and checking accounts, used to purchase certificates of deposit, converted to cash, and used for making payments on their automobile and tractor. On April 13, 1972, Mr. Schneider was indicted for filing false and fraudulent joint income tax returns for the years 1966, 1967 and 1968 and on October 5, 1972 he pleaded guilty as charged for the year 1967. He was sentenced to three years in prison but the *268 sentence in excess of three months was suspended on conditions that he serve three months in confinement and that he be placed on probation for five years. Mr. Schneider served his sentence of three months in prison. The Commissioner, in his statutory notice of deficiency, determined that petitioners understated their taxable income in the following amounts: 1962
$6,489.03
1963
7,646.60
1964
4,674.95
1965
6,781.58
1966
38,091.62
1967
27,492.95
1968
10,365.59
He also determined that all or a part of the underpayment of tax for each year was due to fraud on the part of Petitioner Martin S. Schneider. ULTIMATE FINDINGS OF FACT 1. Petitioners understated their taxable income in the following amounts: 1962
$ 6,489.03
1963
7,646.60
1964
4,674.95
1965
6,781.58
1966
38,091.62
1967
27,492.95
1968
10,365.59
2. At least a part of the underpayment of income tax in each of the taxable years 1962 to 1968, inclusive, was due to fraud on the part of Petitioner Martin S. Schneider OPINION Petitioner Martin S. Schneider is estopped to deny his fraud with respect to the joint income tax return for the taxable year 1967 because *269 he was convicted of tax evasion for that year. , affd. . At the conclusion of the trial we expressed our view that respondent had failed to prove fraud by clear and convincing evidence. Upon further analysis we now conclude that our analysis at the conclusion of the trial was wrong. The omissions from income are too extensive for us to believe that Mr. Schneider did not know he was underpaying his income tax. Substantial omissions of income, while evidence of fraud, do not represent clear and convincing evidence sufficient for imposition of the fraud penalty in a net worth case. ; , affd. ; . The instant case is not a net worth case, however. The instant case is based upon specific items of omitted income in substantial amounts over a period of seven years. Petitioners have not in any way disputed the charges of the Commissioner that they failed *270 to report such income. They rely on a series of personal hardships most of which occurred before and after the years involved here. At the time of trial we were not so aware of the magnitude of the omissions as we are now. For example, in 1962 petitioners sold cattle for $3,762.81 but reported only $832.21. In 1963 they made unidentified deposits of $10,350.06 which were not accounted for on their income tax return. In 1964 they sold grain for $4,545.42 but reported only $2,820.42. In 1965 they sold grain and cattle for $9,647.61 but reported only $2,822.98. In 1966 they sold grain for $34,204.91 but reported only $1,996.86. In 1967 they sold grain for $21,215.44 but reported only $2,200. In 1968 they sold grain for $6,057.96 but reported only $2,680. We regret that our comments at the conclusion of the trial led petitioners to believe that we were finding no fraud except as to the year 1967 but after closely scrutinizing the entire record we cannot in good conscience hold that Mr. Schneider did not know that the returns were fraudulent. His explanation at trial was more in the nature of a plea for sympathy than an explanation as to how he could have omitted so much income. *271 While we are always sympathetic with hardships faced by a taxpayer they must be viewed from the standpoint of whether they are likely to explain the actions of the taxpayer in the preparation of his tax returns. We are now firmly convinced that Mr. Schneider knew he was fraudulently underpaying income tax in each of the years involved and we so hold. Mrs. Schneider seeks relief from liability for the tax in each of the years under the "innocent spouse" provision, section 6013(e). Included in the requirements for the operation of that section is the provision that the spouse not significantly benefit from the items of omitted income. Mr. Schneider testified that he purchased four quarter sections of land from his mother and sisters in 1968 for $128,000 and title was transferred into joint tenancy with his wife after 1969. This is sufficient benefit to deny the benefits of the "innocent spouse" provisions to Mrs. Schneider. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩